UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

EASTERN DIVISION

| | |
|---|---|
| AMERICAN COUNCIL OF THE BLIND, on behalf of itself, its members, and all others similarly situated, BAY STATE COUNCIL OF THE BLIND, on behalf of itself, its members, and all others similarly situated, BRIAN CHARLSON, on behalf of himself and all others similarly situated, and KIM CHARLSON, on behalf of herself and all others similarly situated, | CIVIL ACTION NO. <br><br> CLASS ACTION <br><br> COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |
|         Plaintiffs, | |
|   v. | |
| HULU LLC, | |
|         Defendant. | |

## **INTRODUCTION**

1.     Hulu LLC ("Hulu") excludes blind and visually impaired people from its online streaming services in violation of the Americans with Disabilities Act.  Hulu, one of the largest online-streaming services in the country, offers thousands of shows and movies, including award-winning original content, to most customers at the click of a mouse.  However, the company fails to provide audio description—a separate audio track that blind people need in order to access  the exclusively visual content of a show or movie—on *any* content.  In addition, Hulu fails to make its website and software applications accessible to blind and visually impaired individuals using screen readers—software that converts the visually displayed content on the screen into audible, synthesized speech or outputs that information on a digital braille display. This lawsuit seeks to end such ongoing civil rights violations that Hulu has committed against blind and visually impaired persons in Massachusetts and throughout the United States.

2.      The Americans with Disabilities Act ("ADA") requires that companies that provide their services to the general public make their services accessible to people with disabilities.

3.      Entertainment media plays a crucial role in society and American culture. Notably, this year, anti-gender-discrimination activists have adopted imagery from Hulu's award-winning 2017 original series, "The Handmaid's Tale." "The Handmaid's Tale" is about a theocracy where women have no rights and are forced to bear children. These women wear striking crimson robes and white bonnets. Across the country, women have attended political demonstrations against gender discrimination dressed in the signature outfit featured so prominently in the show. While "The Handmaid's Tale" was originally a 1985 novel, it is salient again because of Hulu's new series. Hulu's exclusion of blind individuals from its online video-streaming services significantly impairs the blind community's access not only to entertainment, but to the cultural capital that media consumption confers.

4.      Plaintiffs American Council of the Blind ("ACB"), Bay State Council of the Blind ("BSCB"), Brian Charlson, and Kim Charlson (collectively "Named Plaintiffs") attempted to resolve this matter without a lawsuit, but were unable to obtain a commitment by Hulu to remedy these barriers to full and equal access.

## JURISDICTION AND VENUE

5.      This is an action for declaratory and injunctive relief, brought pursuant to Title III of the ADA, 42 U.S.C. § 12181, *et seq.* ("Title III").

6.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 for claims arising under the ADA.

7.     Venue is proper in this District, pursuant to 28 U.S.C. § 1391.  The Defendant operates its nationwide internet-based streaming business in this District, and has sufficient contacts to be subject to personal jurisdiction in this District.  A substantial part of the acts or omissions giving rise to Plaintiffs' claims occurred in this District.

8.     Assignment to the Eastern Division is appropriate pursuant to Rule 40.1(D)(1)(c) of the Local Rules of the United States District Court for the District of Massachusetts because the only parties residing in the District of Massachusetts reside in this division.

## PARTIES

9.     Plaintiff American Council of the Blind ("ACB") was founded in 1961 and is a national membership organization with blind and visually impaired members across the nation, with over seventy state chapters and special interest affiliates.  ACB is a Section 501(c)(3) non-profit corporation duly organized under the laws of Washington, D.C. and headquartered in Alexandria, Virginia.   ACB strives to increase the independence, security, equality of opportunity, and quality of life for all blind and visually impaired people.  ACB and its affiliates have been at the forefront of the creation of policies that have shaped the opportunities that are now available to people with disabilities in the United States.

10.     ACB was actively involved in the development of the principles and policies that became a part of the regulations implementing Section 504 of the Rehabilitation Act of 1973 (28 C.F.R. Part 42), the ADA (28 C.F.R. parts 35 and 36), and the 21st Century Communications and Video Accessibility Act of 2010 ("CVAA") (47 C.F.R. part 79).  ACB's national advocacy led to the introduction of auditory stop announcements on public transportation; accessible pedestrian signals; accessible voting machines; and businesses providing accessible credit- and debit-card processing devices so that people who are blind may conduct their business independently and

privately.  At the core of ACB's work is a belief that it is the right of every blind person to be fully included in society.

11.     ACB has expended and continues to expend substantial time and resources advocating for the inclusion of audio description on a variety of media platforms.  ACB has advocated and continues to advocate for strong audio description policies in the CVAA, which incorporates audio description track requirements for certain television-content providers and distributors.  ACB participated in extensive negotiations with Netflix, another online video-streaming service, to add audio description to videos streamed through Netflix's service and make its website and applications accessible using screen readers.  ACB has also expended and continues to expend substantial time and resources providing services and information to blind individuals to help them locate and use audio described entertainment.

12.     In particular, ACB's Audio Description Project ("ADP") promotes and advocates for the use of high-quality audio description in television, movies, and other venues where the presentation of visual media is critical to the understanding and appreciation of the content. ADP accomplishes this goal through, among other things, a biennial conference; community outreach and education; legislative advocacy; and an expansive listing of the current audio-described offerings of TV networks, movies, and streaming services.

13.     ACB itself has been injured as a direct result of Defendant's actions and omissions as discussed herein.  ACB's interests are adversely affected because it expends resources advocating for its constituents who are harmed by Defendant's policies and practices. ACB has expended resources directly petitioning Hulu to include audio description in its streaming content, to no avail.  For instance, in 2009, ACB and other organizations sent a letter to Hulu, requesting that Defendant incorporate audio description and other accessibility and

usability features in all of its services.  Hulu's actions and omissions frustrate ACB's mission of promoting independence and equality of opportunity for blind people, including in access to entertainment.

14.     ACB brings this case on behalf of its blind and visually impaired members who have been harmed by Hulu's actions and omissions as discussed herein.  Numerous members of ACB are interested in using Hulu's video-streaming services but have been deterred from doing so because they know that Hulu does not provide the auxiliary aids and services that are required to give blind users full and equal access to Hulu's services.  These members would use Hulu if Hulu stopped discriminatorily excluding them on the basis of their disabilities.

15.     Plaintiff Bay State Council of the Blind ("BSCB") is the Massachusetts state affiliate of ACB, and the leading consumer and advocacy organization of people with visual impairments in Massachusetts.  BSCB is a membership organization of blind, visually impaired, and sighted individuals committed to an enhanced quality of life for Massachusetts' blind and visually impaired residents.  BSCB is headquartered in Watertown, Massachusetts.

16.     BSCB works to improve access for people who are blind or visually impaired in many areas of life, including employment, education, library services, rehabilitation, technology access, transportation, civil rights, and recreation.  Representatives of BSCB have provided testimony at public hearings and engaged in other advocacy work related to the ADA and other disability-related legislation.

17.     BSCB expends resources and will continue to expend resources advocating for audio description and working to expand opportunities for people who are blind or visually impaired to enjoy recreation, media, and cultural activities.  BSCB offers publications, regional and special-interest chapters, informative meetings, a radio show, and leisure activities for

people who are blind or visually impaired.  BSCB collaborates with the local public television stations WGBH and WGBY to provide audio description, and works with Boston-area theaters to provide live narration of theatrical performances.  BSCB also participated in extensive negotiations with Netflix, another online video-streaming service, to add audio description to videos streamed through the Netflix service and make its website and applications accessible using screen readers.

18.    BSCB itself has been injured as a direct result of Defendant's actions and omissions as discussed herein.  BSCB's interests are adversely affected because it must expend resources advocating for its constituents who are harmed by Defendant's policies and practices.  Hulu's actions and omissions frustrate BSCB's mission of promoting independence and equality of opportunity for blind people, including in access to recreation.

19.    BSCB brings this case on behalf of its blind and visually impaired members who have been harmed by Hulu's actions and omissions as discussed herein.  Numerous members of BSCB are interested in using Hulu's video-streaming services but have been deterred from doing so because they know that Hulu does not provide the auxiliary aids and services that are required to give blind users full and equal access to Hulu's services.  These members would like to use Hulu and would use Hulu if Hulu stopped excluding them on the basis of their disabilities.

20.    Plaintiff Kim Charlson resides in Watertown, Massachusetts, and is the Library Director at the Perkins Braille and Talking Book Library.  Ms. Charlson is blind.

21.    Ms. Charlson enjoys watching movies and television shows with audio description.  Ms. Charlson goes to see audio-described movies in local movie theaters, enjoys audio-described television through cable and local television stations, and watches audio-described videos on Netflix.

22.     Because she cannot see the visual content displayed on a screen, Ms. Charlson uses a screen reader to access websites and software applications.

23.     Ms. Charlson would like to use Hulu but has not subscribed to Hulu because she knows that it does not provide audio description for its video services.   Without audio description, Ms. Charlson does not have full and equal access to Hulu's video-streaming offerings.   Ms. Charlson would use Hulu if Hulu stopped discriminatorily excluding her on the basis of her blindness.

24.     Plaintiff Brian Charlson resides in Watertown, Massachusetts, and is the Director of Technology at the Carroll Center for the Blind.   Mr. Charlson is blind.

25.     Mr. Charlson enjoys watching movies and television shows with audio description.   Mr. Charlson goes to see audio-described movies in local movie theaters, enjoys audio-described television through cable and local television stations, and watches audio-described videos on Netflix.

26.     Because he cannot see the visual content displayed on a screen, Mr. Charlson uses a screen reader to access websites and software applications.

27.     Mr. Charlson would like to use Hulu but has not subscribed to Hulu because he knows that it does not provide audio description for its video services.   Without audio description, Mr. Charlson does not have full and equal access to Hulu's video-streaming offerings.   Mr. Charlson would use Hulu if Hulu stopped discriminatorily excluding him on the basis of his blindness.

28.     Defendant Hulu is headquartered in Santa Monica, California.   Hulu was founded in 2007 and launched for public access in 2008.   Hulu provides live and on-demand online video-streaming services nationwide, including in Massachusetts.   It allows users to access

television shows, movies, and original Hulu programming online.  Users can enjoy Hulu's services through the Hulu website (www.hulu.com); internet-connected televisions; and through software applications on internet-connected devices, including smart phones, tablets, and gaming consoles.  Hulu is jointly owned by The Walt Disney Company, 21st Century Fox, Comcast, and Time Warner Inc.  According to Hulu's website, the company has more than 47 million total unique viewers in the United States.[1]

## FACTUAL ALLEGATIONS

### I.   Hulu Provides Video Streaming Services to Sighted Individuals but Excludes People with Vision Disabilities.

29.     Hulu provides digital video-streaming services to millions of Americans.

30.     Hulu offers a variety of video content through its subscription plans, including live and on demand channels, original series and films, and a premium library of TV and movies.[2]

31.     Through Hulu's on-demand video-streaming service, users can view programs from major television broadcast networks, including 21st Century Fox, The Walt Disney Company, Turner Networks, NBC Universal, A+E Networks, Scripps Networks Interactive, CBS Corporation, and The CW.  This includes shows from channels such as HGTV, Food Network, Travel Channel, NBC, Telemundo, USA, Syfy, ESPN, E!, and MSNBC.

32.     For many of the television shows available in Hulu's on-demand streaming service, users can access prior episodes and seasons.

---

[1] *See About Hulu*, HULU, https://www.hulu.com/press/about (last visited Nov. 17, 2017).

[2] *See id.*

33.   Hulu's Live TV service allows users to stream live TV broadcasts from select channels based on the user's location.

34.   Hulu also provides users with access to its original programming through its on-demand streaming service, including documentaries, mini-series, movies, and series such as the Emmy award-winning drama, "The Handmaid's Tale."

35.   Individuals cannot access Hulu's original programming through traditional television, other streaming services such as Netflix, or video-rental companies.

36.   To access Hulu's video content, customers sign up for a Hulu account and pay a monthly subscription fee.  Hulu's video content may also be accessed by viewing with a friend or family member who is a subscriber.

37.   Hulu users can access the video content through the Hulu website, Hulu's software applications, and third-party digital media players such as Apple TV or Roku.

38.   Hulu's blind and visually impaired users and potential users do not have full access to Hulu's video-streaming service because Hulu does not provide audio description tracks for video content provided on the platform, and because Hulu offers its services through a website and software applications that are inaccessible to blind and visually impaired individuals who use screen readers.

39.   Audio description is an auxiliary aid that allows blind and visually impaired people to have a full audio-visual experience.[3]  It is an audio track that narrates the key visual elements of video content.  This narration describes what a sighted person might take for granted and a blind or visually impaired person can otherwise only experience through whispers from a sighted companion.  The auditory descriptions of visual elements play between dialogue and

---

[3] Congress defined auxiliary aids and services to include "…taped texts, or other effective methods of making visually delivered materials available to individuals with visual impairments[.]"  42 U.S.C. § 12103(1)(B).

other audio content.  For example, objective descriptions of new scenes, settings, costumes, body language, and "sight gags" might be included in an audio description track.[4]

40.     To provide audio description services in video streaming, the video provider offers the audio description track as an option, accompanied by a mechanism through which viewers can select the track.

41.     Hulu does not provide audio description tracks for its content.

42.     Further, Hulu does not provide a mechanism through which users could select audio description, if it were available.

43.     People who are blind and visually impaired use screen-reading technology to navigate and interact with websites and applications.  Screen-reading technology is computer software that enables blind and visually impaired individuals to operate computers, smart phones, and other devices by converting the text displayed graphically on the screen into audible synthesized speech or tactile digital braille.  For a screen reader to work with a website or application, the developer must program for compatibility.  Inaccessible features and screen-reader barriers such as unlabeled and mislabeled elements and inconsistent navigation features on Hulu's website and applications limit blind and visually impaired individuals' ability to use Hulu's video-streaming services. People with visual impairments who use screen readers also require programmed accessibility features such as proper color contrast and the ability to enlarge text.

44.     Plaintiffs understand, based on information they have received from blind and visually impaired Hulu users, that key aspects of Hulu's website and software applications are inaccessible using screen reading software.

---

[4] For examples of audio description, visit http://www.yourlocalcinema.com/ad.mp3samples.html.

45.     Plaintiffs are aware that blind and visually impaired Hulu users experience screen-reader barriers throughout Hulu's online and software platforms including when attempting to manage their accounts, access customer assistance services, search for content, select video viewing options, and interact with streaming videos (e.g. pause/play, manage volume).

46.     Because Hulu's website and applications are not programmed to be accessible through screen reading software, and because Hulu does not provide audio description, Hulu is denying those who are blind or visually impaired access to all of the services, privileges, advantages, and accommodations that Hulu offers through its website and applications.

## II.     The Technology Exists to Readily Make Hulu Accessible to People with Vision Disabilities.

47.     Hulu has the technological capability to provide audio description to blind and visually impaired customers but chooses not to provide it.

48.     Netflix, the largest online video-streaming service and Hulu's primary competitor, already includes audio description for much of its video content.[5]

49.     Audio description tracks already exist for many of the television series and movies that stream on Hulu.  Pursuant to the CVAA, numerous television stations are required to provide audio description for a certain number of hours of prime time content. *See* 47 C.F.R. § 79.3.  In addition, most major production studios now create (or contract out the creation of) audio description tracks for all wide released features.  These additional audio tracks are then distributed with the film.

---

[5] *See Audio Descriptions for Netflix Movies and TV Shows*, NETFLIX, https://help.netflix.com/en/node/25079 (last visited Nov. 17, 2017).

50.     Although audio description tracks exist for many television shows and movies, Hulu does not provide these audio description tracks to its customers.

51.     Upon information and belief, Hulu provides closed-captioning for its video content.  Closed-captioning allows individuals who are deaf or hard of hearing to access video content.  Hulu also provides foreign language tracks for many of its videos.

52.     The Hulu website video-playing interface has controls that allow customers to turn closed-captioning on and off, and to change between language tracks, where multiple languages are available.

53.     Hulu could provide a mechanism to play audio description tracks, much like its mechanisms to control closed-captioning or language tracks.

54.     The technology also exists for Hulu to provide access to its digital interfaces for individuals using screen readers.

55.     Blind and visually impaired people regularly use computers, websites, smart phones, software applications, and other technology through screen-reading software.  Screen-reading software reads out the visual content of a screen, including text, buttons, image descriptions, and menus.

56.     Similarly, websites and applications can be coded to be usable by people with limited sight.  For example, text must sufficiently contrast with background material for some visually impaired people to read it.

57.     Furthermore, the World Wide Web Consortium's ("W3C") Web Content Accessibility Guidelines ("WCAG") 2.0 provide useful standards for making web content accessible.[6]

58.     When websites and applications are appropriately coded, screen-reading software will provide all necessary information and interactivity to a blind or visually impaired user. The software allows users to view menus, navigate the page, read text, hear the purpose of buttons and other interactive features, and make selections.

59.     When websites and applications are incorrectly coded, like Hulu's, blind and visually impaired users are excluded from the content and services available.

60.     Despite readily available technology that would render its streaming services accessible to blind and visually impaired persons, Hulu chooses to exclude these potential users on the basis of disability by refusing to provide audio description tracks and maintaining a website and applications that are inaccessible to individuals using screen readers. By failing to make their online video-streaming services accessible to blind and visually impaired persons, Hulu violates basic equal access requirements under federal law.

61.     Congress provided a clear national mandate for the elimination of discrimination against individuals with disabilities when it enacted the Americans with Disabilities Act. Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by inaccessible online video-streaming services in places of public accommodation, such as Hulu, its website, and its applications.

---

[6] *Web Content Accessibility Guidelines (WCAG) 2.0: W3C Recommendation 11 December 2008*, WORLD WIDE WEB CONSORTIUM (W3C), https://www.w3.org/TR/WCAG20/ (last visited Nov. 17, 2017).

62.     Despite this mandate, blind and visually impaired people do not have equal access to Hulu's video collection.

63.     As a member of the Coalition of Organizations for Accessible Technology ("COAT"), ACB was a signatory to a May 7, 2009 letter to Hulu asking that the company take steps to include any available audio description and to ensure that its website is accessible to and usable by consumers with disabilities. Despite this request and many others from blind Hulu users over the years, Hulu refuses to take action to make its services accessible.

64.     On September 29, 2017, Named Plaintiffs notified Hulu of the unlawful accessibility barriers described herein, and requested that Hulu commit to make its services accessible as required under current law.

65.     Hulu has failed to make such a commitment.

## CLASS ALLEGATIONS

66.     Plaintiffs bring this suit as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure, individually and on behalf of all persons who are blind or visually impaired and who are deterred from using Hulu's services as a result of its failure to provide audio description, and failure to provide and maintain an accessible website and software applications.

67.     Each member of the class is a person with "a disability" pursuant to Title III of the ADA, 42 U.S.C. §§ 12102.  The persons in the class are so numerous that the joinder of all such persons is impracticable and such that disposition of their claims in a class action rather than in individual actions will benefit the parties and the Court.  It is estimated that as many as 10 million Americans are blind or visually impaired.  Conservatively, the proposed class consists of hundreds of persons with vision disabilities.

68.     Defendant has failed and continues to fail to comply with the ADA by providing video-streaming services without necessary auxiliary aids and services (i.e. audio description) and maintaining a website and software applications that are not accessible to individual use screen readers to access such platforms due to vision disabilities.

69.     Defendant has not adopted appropriate policies, procedures, and/or practices to ensure nondiscrimination against people with vision disabilities and equal access to services for persons with vision disabilities.

70.     There are common questions of law and fact involved affecting the parties to be represented in that they all have been and/or are being denied their civil right of access to Defendant's online streaming services as a result of Defendant's actions.

71.     The violations of the ADA set forth in detail herein have injured all members of the proposed class and violated their rights in a similar way.

72.     Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive or declaratory relief with respect to the class as a whole.  Class claims are brought for the purposes of obtaining declaratory and injunctive relief only.

73.     Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to class members predominate over questions affecting only individual class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

74.     Named Plaintiffs will fairly and adequately represent the interests of the class. They have no interests adverse to the interests of other members of the class and have retained

counsel who are competent and experienced in litigating complex class actions, including large-scale disability rights class action cases.

75.     The requirements of Federal Rule of Civil Procedure 23 are met with regard to the proposed class in that:

> a. The class is so numerous that it would be impractical to bring all class members before the Court;

> b. There are questions of law and fact which are common to the class;

> c. The Named Plaintiffs' claims for declaratory and injunctive relief are typical of the claims of the class;

> d. The Named Plaintiffs will fairly and adequately represent common class interests and are represented by counsel who are experienced in class actions and the disability rights issues in this case; and

> e. Defendant has acted or refused to act on grounds generally applicable to the class.

76.     There are common questions of law and fact involved affecting the parties to be represented in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Hulu's goods, facilities, and services due to Hulu's failure to provide audio description and failure to provide and maintain an accessible website and software applications.

## FIRST CLAIM FOR RELIEF

### Violation of Title III of the Americans with Disabilities Act
### (42 U.S.C. § 12182)

77.     Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

78.     Pursuant to Title III, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).

79.     Public accommodations are prohibited from subjecting "an individual or class of individuals on the basis of a disability . . . directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity."  42 U.S.C. § 12182(b)(1)(A)(i).

80.     In addition to Title III's denial-of-participation prohibition, no public accommodation may "afford an individual or class of individuals, on the basis of a disability . . . directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."  42 U.S.C. § 12182(b)(1)(A)(ii).

81.     Discrimination includes "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services[.]"  42 U.S.C. § 12182(b)(2)(A)(iii).

82.     Auxiliary aids and services include "effective methods of making visually delivered materials available to individuals with visual impairments" such as audio description tracks.  42 U.S.C. § 12103(1)(B); *see also* 28 C.F.R. Part 36, Appendix C, Section 36.303 (noting that audio description services "may be considered appropriate auxiliary aids and services").

83.     Hulu is a place of public accommodation as defined by the ADA because it is, or is part of, a "place of exhibition or entertainment," a "sales or rental establishment," a "service establishment," a "library," a "gallery," and/or a "place of public display or collection."   28 C.F.R. § 36.104; 42 U.S.C. § 12181(7).

84.     Hulu owns, operates, maintains, and/or leases the website located at http://www.hulu.com and the Hulu applications for Apple and Android devices where it offers video-streaming services. The website and applications are services, facilities, privileges, advantages, or accommodations of Hulu.

85.     Plaintiffs Kim and Brian Charlson, and the members of ACB and BSCB, are individuals with a disability who are substantially limited in the major life activity of vision.

86.     Because Hulu chooses not to make audio description available for any of its online video-streaming content on any of its platforms, Plaintiffs Kim and Brian Charlson, ACB, BSCB, and each organization's members are excluded from enjoyment of the goods, services, facilities, privileges, advantages, or accommodations Hulu offers to sighted individuals.

87.     Hulu's failure to provide audio description violates Title III's general prohibition of discrimination and the specific requirement that public accommodations provide auxiliary aids and services.  42 U.S.C. §§ 12182(a), 12182(b)(2)(A)(iii).

88.     Hulu has also failed to program and maintain its website and software applications to be accessible to people who are blind or visually impaired and use screen-reading software.

89.     As a result of Hulu's failure to ensure that its website and software applications are accessible to individuals using screen readers, Plaintiffs Kim and Brian Charlson, as well as individual members of ACB and BSCB, are wholly denied participation in Hulu's website and/or

are only provided an opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that which Hulu affords sighted individuals.

90.     Hulu's website and applications are not accessible to people who use screen-readers or have visual impairments, in violation of the ADA's prohibition of discrimination.  42 U.S.C. § 12182(a), 12182(b)(1)(A)(i), 12182(b)(1)(A)(ii).

91.     Unless the Court enjoins Hulu from continuing to engage in these unlawful practices, Plaintiffs will continue to suffer irreparable harm.

92.     As a result of Hulu's wrongful conduct, Plaintiffs are entitled to injunctive relief pursuant to 42 U.S.C. § 12188 requiring Hulu to remedy the discrimination.

93.     Plaintiffs are also entitled to reasonable attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF

### Declaratory Relief

94.     Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

95.     An actual controversy has arisen and now exists between the parties in that Plaintiffs contend, and are informed and believe that Defendant denies, that by failing to provide audio description services and by failing to provide and maintain an accessible website and software applications, Defendant fails to comply with applicable laws, including but not limited to Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181, *et seq*.

96.     A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court:

1.      Declare that Defendant's failure to provide audio description for its streaming video content violates Title III of the Americans with Disabilities Act;

2.      Declare that Defendant's failure to make its website accessible to people who use screen-reading software and to people who have visual impairments violates Title III of the Americans with Disabilities Act;

3.      Declare that Defendant's failure to make its software applications accessible to people who use screen-reading software and to people who have visual impairments violates Title III of the Americans with Disabilities Act;

4.      Issue an injunction requiring Hulu to provide audio description on all of its streaming video content and to affirmatively market the availability of audio description to blind and visually impaired individuals;

5.      Issue an injunction requiring Hulu to bring its website into compliance with the WCAG 2.0, Level AA standard of digital accessibility, and to provide an equivalent level of access for its software applications;

6.      Award costs and reasonable attorneys' fees; and

7.      Award such other and further relief as the Court deems just and proper.

Dated:  November 20, 2017          Respectfully submitted,

AMERICAN COUNCIL OF THE BLIND, BAY STATE COUNCIL OF THE BLIND, BRIAN CHARLSON, and KIM CHARLSON,

By their attorneys,

/s/ Caitlin Parton
Caitlin Parton
cparton@dlc-ma.org

BBO No. 690970
Stanley J. Eichner
seichner@dlc-ma.org
BBO No. 543139
DISABILITY LAW CENTER, INC.
11 Beacon Street Suite 925
Boston, MA 02108
Tel.: 617-723-8455
Fax: 617-723-9125


_Rebecca S Williford_

_____
Rebecca Williford, *pro hac vice* pending
rwilliford@dralegal.org
CA Bar # 269977
Sidney Wolinsky, *pro hac vice* pending
swolinsky@dralegal.org
CA Bar # 33716
Meredith Weaver, *pro hac vice* pending
mweaver@dralegal.org
CA Bar #299328
DISABILITY RIGHTS ADVOCATES
2001 Center Street, 4th Floor
Berkeley, CA 94704
Tel:  (510) 665-8644
Fax:  (510) 665-8511